[Sheffield City Co. *et al.* v. Tradesmans National Bank.]

# Sheffield City Co. *et al.* v. Tradesmans National Bank.

### *Bill in Equity to enforce Lien for Taxes.*

1. *Lien for taxes; exists as to purchaser for the particular year for which the taxes are assessed.*—The lien conferred by statute upon the purchaser at a tax sale, which is ineffectual to pass the title to the purchaser, (Code, § 4078), exists only for the taxes of the year for which the property was assessed.

2. *Same; lien for taxes paid after purchase at tax sale does not arise until after judgment in an action of ejectmenı* The lien created by statute in favor of the purchaser at a tax sale, which was invalid for any other reason than that the taxes were not due for taxes paid subsequent to the purchase, (Code, §§ 4083-4) does not arise and is not bestowed except at the end, and as the result of a judgment in ejectment for the land so sold; and, therefore, a purchaser at a tax sale who has subsequently paid taxes upon such property, but in whose favor there has been no judgment rendered in the action of ejectment for said lands, can not maintain a bill in equity to enforce a lien arising from the payment of the taxes for years subsequent to his purchase.

APPEAL from the Chancery Court of Colbert.

Heard before the Hon. W. H. SIMPSON.

The bill in this case was filed by the appellee, the Tradesmans National Bank, against the appellant, the Sheffield City Company, C. B. Ashe, as receiver of the Sheffield City Company, Robert H. Wilhoyte and Thos. L. Fossick, as trustees, and E. F. Enslen. The purpose of the bill and the facts of the case are sufficiently stated in the opinion.

. The prayer of the bill was as follows: "That your Honor will, on the hearing of this case, decree that orator has a lien on the property hereinbefore described for the monies paid out by orator as before stated, together with the interest thereon, in accordance with the laws of Alabama in regard to property sold for taxes; that the register of this court be required to

take and state an account and ascertain and report what amount of principal and interest is due orator by reason of the payments made by orator as hereinbefore set forth; that your Honor will by your decree direct that said lands be sold, or that so much thereof as may be necessary be sold, and the proceeds of said sale be applied to the payment of the amount so found to be due to orator:

On the submission of the cause on the pleadings and proof, the chancellor decreed that "complainant has a lien on the property mentioned and described in the bill, for the monies paid out for taxes as set forth in the bill, in accordance with the laws of Alabama in respect to real estate sold for taxes, when the sale, on account of irregularities, is ineffectual to pass the legal title; and that said lien exists independent of the statutory remedy given for its enforcement, when a suit in ejectment fails, and may be enforced in a court of equity." There was then an order of reference to the register to state an account and ascertain the amount of State, county and municipal taxes paid by the complainant for which the lands were liable at the time of the sale mentioned in the bill and for the payment of which they were sold and the interest thereon, and also the amount of the taxes on the lands which the complainant has paid since such sales, with interest thereon

Upon the coming in of the report of the register ascertaining such amounts, it was in all things ratified and confirmed, and it was decreed that said lots be sold if the amount so ascertained to be due was not paid within sixty days after the enrollment of the decree. From this decree the defendants appeals, and assign the rendition thereof as error.

WILHOYTE & NATHAN, for appellants.—"At comman law the purchaser at a tax sale comes strictly and rigidly within the rule of *caveat emptor.*   \*   \*   \* And if his tax title proves to be worthless he cannot recover the amount he has paid in an action against the officer, the owner, or the municipality." (The underscoring of the words strictly and rigidly is the writers.)

Black on Tax Titles, § 463; *Hamilton v. Valiant,* 50 Md. 139; *Indianapolis v. Langsdale,* 29 Ind. 486; *State v. Casteel,* 110 Ind. 174; *Sullivan v. Davis,* 29 Kan. 28; *Ross v. Mabry,* 1 Lea 226; Cooley on Taxation, 329, 375.

The complainant in this case did not keep the possession which entitled it to claim a lien for the taxes paid subsequent to the sale. The statute did not provide such lien.—Code, §§ 4083-4; *Gardiner v. Collins,* 2 Pet. 93; *Brewer v. Blougher,* 14 Pet. 178; 23 Am. & Eng. Ency. Law, 298, 299; *Walker v. Dainwood,* 80 Ala. 345; *Janney v. Buell,* 55 Ala. 410; *Alston v. Alston,* 34 Ala. 15.

SIMPSON & JONES, *contra,* cited *Westmoreland v. Foster,* 60 Ala. 448; *Carmen v. Bank,* 101 Ala. 189; *Walker v. Dainwood,* 80 Ala. 245; *Parker v. Boutwell,* 119 Ala. 293; *Turner v. White,* 97 Ala. 545; *Valle v. Fleming,* 77 Am. Dec. 558; *Meher v. Cole,* 7 Am. St. Rep. 101; *Faulk v. Calloway,* 123 Ala. 325; *Cobb v. Vary,* 120 Ala. 264; *Wartensleben v. Heathcock,* 80 Ala. 565.

HARALSON, J.—The principle is generally recognized in the books, that taxes are not a lien unless expressly made so by statute.

Mr. Cooley says: "In considering this remedy by suit, it is to be kept in mind that it exists only by force of the statute. The statute must, therefore, be closely followed in the proceedings."—Cooley on Tax., 444, 449.

Mr. Desty observes: "A tax is not a lien unless it is expressly made so by law or ordinance which imposes it. The lien on real estate for taxes has no existence, unless there be some statute creating it, and such statute must be strictly construed."——Desty on Tax., 734; *Canal Co. v. Gordon,* 6 Wall. 561; 25 Am. & Eng. Ency. Law, 267; 1 Jones on Liens, § 112; 1 Pom. Eq. Juris., § 281; Endlich on Int. of Statutes, 154, 434, 435.

In *Chandler v. Hanna,* 73 Ala. 392, it is said: "The rule is general, of great practical importance, and has been frequently acted upon, that 'when by a statute a

new right is given, and a specific remedy provided, or a new power, and also the means of executing it are provided by statute, the power can be executed and the right vindicated in no other way than that prescribed by the statute.' * * * The rule does not collide with the general rule, that the jurisdiction of a court of equity is not impaired by statutes conferring upon other tribunals jurisdiction which was exclusively equitable, unless the statutes expressly take away the equitable jurisdiction; nor with the other well settled rule, 'that if a statute gives a remedy in the affirmative, without a negative, express or implied, for a matter which was actionable at the common law, the party may sue at the common law as well as upon the statute; for this does not take away the common law remedy.' * * * In the cases to which these rules are applied, the right existed and its enforcement lay within the jurisdiction of either the court of equity or the common law courts. * * * But when the right is solely and exclusively of legislative creation, when it does not derive existence from the common law, or from the principle prevailing in courts of equity, jurisdiction of it may be limited to particular tribunals, and specific peculiar remedies provided for its enforcement. The jurisdiction and the remedy being bounded by the statute, can be pursued and exercised only before the tribunals and in the mode the statute provides. Other tribunals cannot exercise the jurisdiction without enlarging the operation of the statute." So it was held in that case, that the lien of a mechanic and materialman was a new right, created by statute for which a specific remedy was provided by action at law, and in the absence of special cause for equitable interposition, a court of equity could not assume jurisdiction of its enforcement.—*Walker v. Dainwood,* 80 Ala. 245; *Globe I. R. & C. Co. v. Thacher,* 87 Ala. 453, 465; *Phillips v. Ash,* 63 Ala. 414; *Wimberly v. Mayberry,* 94 Ala. 355; *Janney v. Buell,* 55 Ala. 408.

The facts of the case to which the foregoing principles are applicable, are undisputed, and as stated by the complainant's counsel, and as appear in the transcript, are, that on the 29th September, 1894, the de-

fendant, the Sheffield City Company, executed a deed of trust of all its property to Wilhoyte and Fossick for the benefit of creditors; that before said deed was made, in June, 1894, the complainant, Tradesman's National Bank, bought said property, 287 lots in Sheffield, at a tax sale for State and county taxes, received a certificate of purchase, and afterwards, a deed to the property from the probate judge. Afterwards, in July, 1894, the same property was sold by the city of Sheffield for municipal taxes and bought in by the complainant bank. A deed was accordingly made to it, and the property has been assessed ever since to complainant, and the taxes paid by it and by no one else.

In May, 1898, in the case of Enslen v. the defendant company and one Harris, C. B. Ashe was appointed receiver of all the assets of the defendant company, and is now acting as such receiver, and he is not nor are said trustees taking any steps to redeem said property, and there are no assets of said corporation out of which said taxes so paid by complainant can be paid, except out of the said lots included in said tax sales. It was not averred that complainant ever went into possession of said property. It is averred that E. F. Enslen claims to have a lien on said property by virtue of a judgment rendered against the defendant company, in the circuit court of Colbert county, on the 11th April, 1895, based on a claim which was due before the execution of said deed of trust.

The bill further alleges, that by reason of certain irregularities, said tax *sales* were ineffectual to pass the legal title (but not because the taxes were not due) and prays for the enforcement of the lien which the statutes of Alabama give to complainant for the payment of the money paid out for taxes on said property.

It is contended by the defendants that, whether said sales were void or not, complainant has no right to invoke the aid of a court of equity to enforce any lien for the recovery of sums paid out in taxes to the State, county and city on said property since said sale in 1893.

Section 459 of the Code of 1886 (Code 1896, § 3921) provided, that from and after the first of January of each year, the State shall have a prior lien upon each and every piece or parcel of property, real or personal, for the payment of taxes which may be assessed against the owner, or upon such property, *during that year* for the use of the State, and in favor of the county *for taxes during the year*, in like manner, for the use of the county. Section 3921 of the Code of 1896, is to the same effect, except that the lien is from the first of October, instead of from first of January of each year.

Section 597 of Code of 1886 and 4078 of Code of 1896, provide that "When the sale of any land sold for the payment of taxes is, for any cause, ineffectual to pass the title to the purchaser, except in cases in which such sales are in this title [chapter in the section of Code of 1896] expressly declared to be invalid, such sale shall operate as an assignment to the purchaser of the rights and liens of the State and county in and to the land sold." This lien of the State on property, it is to be observed, is for the taxes of the year for which it was assessed. If the property is assessed for a particular year,—as in this case for the year 1893,— the lien extends no further so far as it grows out of that assessment, than for the security of the taxes for that year. If the property assessed for a particular year, be sold by the State for the enforcement of the State and county taxes of that year, and is purchased by a stranger, the lien, so far as the interest of the State is concerned, is satisfied, and the State has no liens for future assessments to be assigned or conferred on a purchaser.—*Winter v. City Council*, 101 Ala. 649. The State has its money, and no remedy is bestowed for its recovery back from the State, even if the sale for taxes was ineffectual to pass the title to the purchaser. The rule of *caveat emptor* applies to him.—Desty on Tax., 850; Cooley on Tax., 476. So, if that were all, the purchaser would be remediless as to voluntary payment of *future assessments of taxes* on the property. In other words, the lien which the statute (§ 3921) gives the State and county, and

which is a prior and superior lien to all other liens, is
confined by the terms of the statute,—"for the payment
of the taxes which may be assessed against the owner,
or upon the property, *during that year* for the use of
the State" and county.  But, the sale of the land for
the State and county taxes may have been made in
such a manner as to be ineffectual to pass the title to
the purchaser, in which case, without more, the owner
could sue the purchaser and recover the land, although
the taxes due the State and county had been fully
paid by the purchaser.  The legislature sought to rem-
edy this hardship and injustice, and by said section
4078 (597) of the Code, above referred to, provided, so
far as the purchaser's interests are concerned, for keep-
ing the State and county lien alive for the benefit of
the purchaser, when the sale was ineffectual to pass
title to the purchaser, and assigned it to him, for his
security, though the State and county, having been
fully paid, have no pecuniary interest in the matter. The
legislature recognized the fact, that it would be most
unjust for the owner to recover his land from such
purchaser, on account of the irregularity of the sale
under which it was sold for taxes, and not refund to
him the taxes, costs and expenses of the sale, for which
he, the owner, was liable and should have paid.  Other-
wise, owners of taxable property would be encouraged
not to pay their taxes, and speculate on the chances,—
far more than equal,—of a recovery of the land from
the purchaser, because of irregularities in the assess-
ment and sale.  So it was, by that and other sections of
the Code, the State has sought to protect purchasers
at tax sales in providing a security and a remedy for
the money they have paid out for delinquent owners,
when the title they acquired from the State was in-
valid, because of irregularities committed by the of-
ficers of the State.  In so doing, the owner is not in-
jured, the purchaser is protected, and the general policy
of the State to encourage the purchase of property for
delinquent taxes, promoted.  The point to be empha-
sized, and not overlooked in every case is, that the lien
of the State and county, assigned by the terms of the
statute to a purchaser, is a yearly one, and exists in

no instance, except for the taxes assessed and payable for the particular year or years for which the property was sold.  Several years' taxes and liens therefor may exist, before the sale for some reason may have occurred, but the liens and taxes for each year are separate and distinct.  So it is, that a purchaser has and enjoys the benefits of this lien, to the full extent for which it was bestowed, and may enforce it for his re- · imbursement for the amounts he has' paid the State and county for the owner,—in case the sale was ineffectual to pass the title to him, but for no other reason. If the sale was legal, he acquired the title and needed and acquired no lien from the State and county.  Here appears the first concern of the State for the protection of purchasers at tax sales, and the provisions enacted for their benefit in securing to them the amounts they have paid at the sale, which delinquent owners owed and were under duty to pay.

It may be added in this connection, as a further safeguard to tax purchasers, that section 4081 (599) entitles the purchaser of land at a tax sale, or any one claiming under him, after the expiration of six months from the date of sale, to maintain an action of ejectment or statutory action in the nature of ejectment, or of unlawful detainer for the recovery of the possession of the land, to be held by him, subject only to the right of redemption bestowed by the statute on the owner.  As another remedial safeguard to the purchaser, the legislature further provided, that "No action for the recovery of real estate sold for taxes shall lie, unless the same is brought within three years from the date when the purchaser became entitled to demand a deed therefor," etc.—Code, § 4089; *Capehart v. Guffey,* 130 Ala. 425.

But, as we have stated, so far as the lien of the State and county is concerned, it exists and is provided for and is assigned to the purchaser, only for the taxes of the particular year or years for which the land was sold.  Here the legislature might have rested without other provisions on the subject, leaving its revenue system in this regard, incomplete.  It was manifest, how-

ever, that the titles of purchasers might and would be disputed by owners, and that suits would be brought to test the validity of the assessment and sale of lands for taxes. To meet such contingencies, the legislature took another step forward, and provided still ampler legislation for their protection, in the enactment of other provisions. It occurred to the legislative mind, that a purchaser, while he had assigned to him by statute the lien of the State and county to protect him in the purchase of the land when originally sold, to the extent of what he then paid, might, under the presumption that he had acquired a good title, go forward thereafter and discharge assessments against the property in future years, which amounts, in case the original sale was declared invalid, should be refunded to him. For relief in such cases, section 4083 of the Code was adopted providing: "If, in any suit brought by the purchaser or other person claiming under him to recover lands sold for taxes, a recovery is defeated on the ground that the sale was invalid for any other reason than that the taxes were not due, the court shall forthwith, on the motion of the plaintiff, impanel a jury to ascertain the amount of taxes for which the lands were liable at the time of the sale, and for the payment of which they were sold, with interest thereon from the date of sale, and the amount of such taxes on the lands, if any, as the plaintiff, or the person under whom he claims, has, since such sale, lawfully paid, with interest thereon from the date of such payment, the interest on both amounts to be computed at the rate of twelve per cent per annum; and the court shall, thereupon, render judgment against the defendant in favor of the plaintiff for the amount ascertained by the jury, and the costs of suit, which judgment shall constitute a lien on the lands sued for, and payment thereof may be enforced as in other cases."—Code, § 4083.

The next section, 4084, makes provision for the payment of the purchaser, or other person claiming under him, when sued for possession by the owner, and the purchaser claims and defends under his tax title, and his defense fails on the ground that the sale was invalid for any other reason than that the taxes were not due,

and the plaintiff recovers. Provision is then made for the ascertainment of the amounts paid by the purchaser, with interest at 12. per cent per annum, for which he is to have a judgment and lien, as provided in the other section.

These sections, going further than section 4078, as to a lien for which the lands were sold, but including all taxes, State, county and municipal which the purchaser may, since the sale, have paid on the property, give in addition a lien on it for the whole sum, for his indemnification and reimbursement.—*Turner v. White,* 97 Ala. 545; *Cobb v. Vary,* 120 Ala. 263.

These sections are cumulative of rights and remedies as provided in said sections 3921 and 4078. The latter sections (4083 and 4084) themselves confer a lien for the purposes in them specified, but this lien is distinct from the first one bestowed; and a full and ample remedy is provided in said last named sections for suits arising under them. The right here bestowed was a new one, theretofore not existing, and the remedy for its enforcement is provided in the same statute which created the right. Under these two sections, as we have said, the lien is created distinct from that given to the State under the former section, 3921. It does not arise and is not bestowed, except at the end and as the result of a judgment in ejectment, and it is, then, and not before, the judgment which constitutes a lien on the lands sued for arises. They are as distinct as two mortgages on the same land are. They are bestowed on different persons, at different times, on different conditions and the latter has a 12 per cent penalty by way of interest, not attached to the former, and embraces municipal taxes, which the lien given the State by statute does not cover.

When this new right is sought to be enforced, the specific remedy if provided by statute must be pursued, and chancery has no jurisdiction to enforce it. Authorities *supra.*

This suit is instituted primarily not to enforce the purchaser's lien to it by the State for the purchase money, etc., paid at the tax sale for the year 1893. Its chief object is to enforce the lien for taxes for sub-

sequent years, when no such lien exists, and cannot exist, except at the end of an ejectment suit, and a judgment rendered therein, in favor of the complainant, as provided in said section 4083. It may be, if the proceeding had been to enforce the lien of the State for the year 1893, assigned under the statute to complainant, that the chancery court, by virtue of its jurisdiction generally to enforce liens, when no other adequate, legal remedy exists or is provided, would have had jurisdiction to entertain the action.—*Westmoreland v. Trousdale*, 60 Ala. 448; *Carmen v. Ala. Nat. Bank*, 101 Ala. 189. But that case is not before us.

It results that the decree of the court below is erroneous, and must be reversed. The judgment of this court heretofore rendered reversing the decree and dismissing the bill, will be set aside, and the judgment will now be rendered, reversing the decree below and remanding the cause.

Reversed and remanded.