(135 So. 340)

**MORRIS v. CARD.**

6 Div. 743.

Supreme Court of Alabama.

May 14, 1931.

Rehearing Denied June 18, 1931.

O. B. Cornelius, of Birmingham, for appellant.

THOMAS, J.

The original bill by the owner of the land was for redemption from tax title and to quiet title, and the decree was for relief.

The evidence shows chain of title of the vacant lot in the city to complainant, who took possession, fenced, and planted a hedge about the front and sides thereof. The contrary statement of fact as to possession by the respondent-appellant, that he was in possession when he secured a tax deed, claims adverse possession of three years by renting the land for the cutting of grass therefrom for the years 1920, 1921, and 1922, and that said possession began in the "spring of the year" 1920, when he plowed, harrowed, and sowed soudan grass, according to the evidence of J. C. Rogers. Thereafter it grew up in weeds that were cut by defendant.

The agreed statement of facts shows regular chain of title from the Edgewood Land Company to complainant, and that the company was in possession when the conveyance was made to W. J. Hancock in 1913; he conveyed to Brazelton the same year, the latter to Cheeseman in 1914, then to the State Building & Loan Association, and then to Brazelton, which latter conveyance was of record prior to the sale for taxes and the tax deed, and he was the owner at the time of the tax sale for the 1916 taxes. The taxes for the years 1912 to 1915, inclusive, were assessed and paid by the Edgewood Land Company. It is further shown by the agreed statement of facts that the Brazeltons sold and conveyed to appellee Card in 1929. The lot was assessed and taxes paid for the years indicated by the Edgewood Land Company, and was not included in the assessments by Card, the Brazeltons, State Building & Loan Association, Cheeseman, or Hancock.

It is recited:

"On December 28, 1914, Nina H. Brazelton and husband, by Warranty Deed conveyed the lot to S. H. Cheeseman, which was recorded in Deed Book 807, page 309.

"On December 29, 1914, S. H. Cheeseman and husband, conveyed the lot to State Build-

W. A. Weaver and J. Wiley Logan, both of Birmingham, for appellee.

ing & Loan Association, which deed was recorded in Deed Book 807, pages 311–312. On July 8, 1915, State Building & Loan Association by deed conveyed the lot to N. H. Brazelton by deed recorded in Volume 821, page 426, which conveyance was the last conveyance as shown by the records of conveyances in this County, prior to the tax sale, and N. H. Brazelton, who is the same person as Nina H. Brazelton named in this agreement, at the time of the tax sale, was the record owner.

"On November 30, 1929, Mrs. N. H. Brazelton and husband, G. T. Brazelton, conveyed to S. H. Card, the complainant, the lot, a copy of which deed is marked Exhibit 'E' to defendant's answer and cross-bill, and mailed the deed from Washington, D. C. soon thereafter to the complainant in Birmingham, Alabama. * * *

"D. E. McClendon was Tax Assessor of Jefferson County, Alabama, in 1916, and it is agreed that he would testify he did not know the owner of the lot, and that as Tax Assessor, he knew or learned that the lot was subject to taxation in Jefferson County, Alabama, and was not embraced in any return made to him prior to the First Monday in February, 1916, by any tax payer, and that as Tax Assessor, he made a demand upon Edgewood Land Company, a corporation, who resided in Jefferson County, Alabama, the company to whom the property was last assessed. Prior to assessing the lot to 'owner unknown,' the Tax Assessor gave notice to Edgewood Land Company that taxes for the year 1916 had not been assessed and when he made the assessment to 'owner unknown' in 1916 the Tax Assessor did not know who the owner was, but only knew who the last owner was, according to the former assessment and made an effort to find out who the true owner was, according to the then regular system of doing those things in said Tax Assessor's office in 1916. That the Tax Assessor did not handle this particular matter and does not have any independent recollection of this matter, except as a general course of business in his office, and that the system was a check system by which the Tax Assessor's office force would check every lot to the party who assessed it and when the clerical force completed the checking of the assessments, the force then went over the check books and any lot not assessed the office force referred back to the assessment to see if the lot was overlooked and finding it not assessed to the Edgewood Land Company, the Tax Assessor's office notified them, and that the Tax Assessor had no other way he could go about locating the owner except to look at the records of those who formerly assessed it, which was as far as they went, and which was the method used as to this particular lot; and, Edgewood Land Company failed to assess the property for 1916 after notice to do so by the Tax Assessor, and the Tax Assessor listed the lot to 'Owner Unknown' after the first Monday in February 1916."

It is further recited that no defense was interposed and a decree of sale was made after due notice and appellant was purchaser; that the tax collector delivered to respondent a certificate of purchase to said lot, and "on July 21, 1919, the land had not been redeemed and the defendant surrendered his certificate of purchase to the Judge of Probate, who executed and delivered to him a deed to the lot"; that "the defendant has regularly assessed each year since purchase at the Tax Sale in 1917, the land in question, and has paid the assessments for State and County each year up to the present time, and the land is regularly assessed for the current tax year by the defendant. Complainant nor N. H. Brazelton have ever assessed or paid taxes on said lot."

It is further agreed that a correct copy of the record of tax sales is exhibited; that defendant regularly assessed same for taxes since his purchase in 1917 and for the current year, the year in which the bill was filed; that there were also assessments for street and sidewalk improvements paid by respondent that are not questioned.

The decree allowed redemption by the original owner from the purchaser at state tax sale, and required no payment of the amount of sidewalk and street improvements assessed as asserted in the answer of the original respondent.

The prayer, among other things, was:

"* * * That Your Honors will decree that this defendant and cross-complainant was and is rightfully in possession of said lot under and by virtue of said tax deed, and that he is entitled to possession thereof, and has a lien on said land for all taxes, State and County and Municipal, either ad valorem or for public improvements, as aforesaid, with lawful interest thereon, and a reasonable attorney's fee for defending defendant's said tax title.

"Further, that the Court will by said decree adjudicate what, if any, right, title, interest or demand the complainant has in and to said land, and what, if any, right, title, interest, claim and demand this defendant and cross-complainant has in and to said land, and will by said decree finally adjudicate defendant's title therein to be paramount and superior to complainant's said title."

■ The warning sign erected on a post by appellant merely evidenced a claim of possession or title—not of actual, peaceable possession. Jordan v. McClure Lumber Co., 170 Ala. 289, 310, 54 So. 415. The testimony of a witness, as a collective fact, that he is in possession, is sufficient evidence of possession, if it is not further shown on cross examina-

tion that the statement was a mere conclusion without the required supporting fact. Sovereign Camp, W. O. W. v. Hoomes, 219 Ala. 560, 564, 122 So. 686, and authorities there cited. The tendencies of evidence that the land was generally known as that of appellant were insufficient. It is the rule that ownership and possession of land cannot be proved by general notoriety nor by reputation. Doe ex dem. Hooper v. Clayton, 81 Ala. 391, 400, 2 So. 24; Shelton v. Stapler, 219 Ala. 15, 121 So. 34.

The tax sale was June 20, 1917, the deed of date of July 31, 1919, the planting of grass by Rogers in the spring of 1920 in the "latter part of April or the first of May," and suit brought in 1929. Does the evidence show respondent in possession for the period of the statute? It was provided by General Acts of 1915, p. 474, § 239; Code 1923, § 3107, that "no action for the recovery of real estate sold for the payment of taxes shall lie, unless the same is brought within three years from the date when the purchaser became entitled to demand a deed therefor." Loper v. E. W. Gates Lumber Co., 210 Ala. 512, 98 So. 722. Section 3108, Code of 1923, conferred an additional right of redemption in cases where valid tax titles have been made and the original owner remains in possession, and such right is not subject to the two years' limitation for redemption as provided by section 3109, Code. Green v. Stephens, 198 Ala. 325, 73 So. 532; Burdett v. Rossiter, 220 Ala. 631, 127 So. 202; Bell v. Propst, 220 Ala. 641, 127 So. 212.

And by the terms of the statute (section 3108) when the owner is sued by the holder of tax title, that defendant may have ascertainment of the amount required to redeem, and pay same. Green v. Stephens, supra. The owner remaining in possession need not wait for suit, but may precipitate the litigable questions for decision by a bill to quiet title under the statute. Section 9905, Code; Screws v. Heard, 217 Ala. 14, 114 So. 360; Burdett v. Rossiter; Bell v. Propst, supra.

The tax sale under which appellant claims title is asserted to be invalid for the reason that the tax assessor made only a casual attempt to locate the owner before assessing it to "owner unknown." The provision of the statute under which the assessment was made is section 2118, Code of 1907. A rigid adherence to directions and forms of the statute regulating assessment and sale of lands for taxes is required (National Bank of Augusta v. Baker Hill Iron Co., 108 Ala. 635, 19 So. 47), and the burden of proof as to this is on him who claims under the tax title. Pollak v. Milam, 190 Ala. 569, 67 So. 381; Drennen v. White, 191 Ala. 274, 68 So. 41; Galloway Coal Co. v. Warrior Black Creek Coal Co., 204 Ala. 107, 85 So. 440; Loper v.

E. W. Gates Lumber Co., supra; Greil Bros. v. City of Montgomery, 182 Ala. 291, 62 So. 692, Ann. Cas. 1915D, 738; Lowe v. Martin, 79 Ala. 366. Land cannot be assessed to an unknown owner if the assessor by proper inquiry and search can ascertain the owner.

In Oliver v. Robinson, 58 Ala. 46, 50, Judge Stone says: "Possession and occupation of lands, in the absence of all other proof, is prima facie evidence of ownership, and is constructive notice to all persons acquiring an adversary interest, of every right, legal or equitable, which such possessor owns. 2 Brick. Dig. 627, §§ 39, 40, 41; Anderson v. Melear, 56 Ala. 621, Dec. term, 1876; 2 Brick. Dig. 519, § 181. When the owner or claimant, or any one holding under him, is in the actual occupation, the assessor is without excuse for assessing such lands to 'owner unknown.' While ascertaining, 'from inquiry or otherwise, the property and other items of taxation,' and the value of the same, with a view of assessing the taxes upon it, under section 35 of the act, it would add little or nothing to his labors, to inquire for the reputed owner or occupant of the property, if real estate. * * * And the duty of demanding in person, or by deputy, or by written notice, when unable to find them, that delinquents shall make a return of the subjects of taxation for which they are liable, goes still further in disarming the assessor of all excuse for leaving his assessments incomplete."

See, also, Lassitter v. Lee, 68 Ala. 287; Crook v. Anniston City Land Co., 93 Ala. 4, 9 So. 425.

It would appear that the tax assessor did what was reasonable in the premises short of an examination of the record, and in the absence of a visible and actual possession of the vacant lot. Morris v. Waldrop, 213 Ala. 435 (5), 105 So. 172.

The testimony of the respondent was that since 1913 neither of the Brazeltons had been "in possession of the lot sued for"; that no suit had been brought for possession of the lot; that he rented the land to Rogers for the years 1920, 1921, and 1922, and the latter grew hay thereon "during the spring, summer and fall months of said years"; that he was in the possession and claimed to be the owner thereof on November 30, 1929, when complainant purchased from Brazelton.

It is the contention of appellant that appellee is not entitled to redeem for the reason (it is insisted) that he did not retain the possession of the property to and at the time the bill was filed. Under Green v. Stephens, 198 Ala. 325, 73 So. 532; Georgia Loan & Trust Co. v. Washington Realty Co., 205 Ala. 288, 87 So. 794, it is declared of the statute (section 3108, Code) that it is immaterial that the purchaser hold a vested tax title, or that the periods for the other methods of redemp-

**258**

tion have expired, the owner, his heir, devisee, vendee, or mortgagee of land in possession, sold for taxes, is not required to wait for ejectment against him, but may file a bill in equity to quiet title. And it was under such announcement that complainant filed his bill to redeem. Bell v. Propst, 220 Ala. 641, 127 So. 212. Notwithstanding respondent's statement that he was in possession when the Brazelton deed to Card was made, and when the bill was filed, the facts were to the effect that Card, the immediate vendee of Brazelton, the original owner, was in actual possession at such times and the statute has application. Section 3108, Code.

• ▓▓▓ The evidence is clear that the lot was vacant; that aside from occasionally cutting the weeds and grass for very limited periods, there was no actual and visible possession until so taken by complainant after his purchase from Brazelton.

The answer of respondent Morris, filed January 30, 1930, cannot be sustained under his plea of three years' adverse possession against Card's right as Brazelton's vendee to redeem from taxes and street assessments exhibited in detail by the cross-bill. We approve the decree in allowing redemption.

▓▓▓ The decree fixes the amount necessary to redeem and takes no account of the sidewalk and street improvement assessments paid by Morris to clear the property of said liens. These amounts should have been included in the amounts necessary to redeem. Wartensleben v. Haithcock, 80 Ala. 565, 570, 1 So. 38; Cobb v. Vary, 120 Ala. 263, 24 So. 442; Turner v. White, 97 Ala. 545, 551, 12 So. 601; Acts 1915, § 240, p. 475. For the failure to allow such municipal taxes and assessments amounting to approximately $322.27 and lawfully paid by respondent in the original bill and complainant in the cross-bill, the decree is reversed, and the cause is remanded for proper calculations of the amounts of due redemption charges and interest.

Reversed and remanded.

ANDERSON, C. J., and SAYRE and BROWN, JJ., concur.

#### On Rehearing.

THOMAS, J.

The Acts of 1915, p. 475, § 240, the statute of force when the lands were listed and sold for taxes, provided: "When the suit is against the person against whom the taxes were assessed, or the owner of the land at the time of the sale, his heir, devisee, vendee, or mortgagee, the court shall on motion of the defendant, made at any time before the trial of the cause, ascertain [1] the amount paid by the purchaser at the sale, and [2] of the taxes subsequently paid by the purchaser, together with ten per cent. per annum thereon, and a reasonable attorney's fee for the plaintiff's attorney for bringing the suit, and shall enter judgment for the amount so ascertained in favor of the plaintiff against the defendant, and the judgment shall be a lien on the land sued for." (Numbers supplied.)

▓▓▓ The Act of 1919, p. 366, § 288, the law of force at the time the redemption is effectuated, is not, in all respects, as that of the date of the assessment and sale. It was different in the last-cited statute in the requirement of a different rate of interest; the provision for reasonable attorney's fee for tax purchaser "for bringing the suit" against the "person against whom the taxes were assessed, or the owner of the land at the time of the sale, his heir, devisee, vendee, or mortgagee," is unchanged. The statute that applies is that of the date of the assessment and sale consummation by the tax deed. 37 Cyc. 1382, 1383; Boyd v. Holt, 62 Ala. 296; Bracely v. Noble, 201 Ala. 74, 77 So. 368; Turner v. White, 97 Ala. 545, 551, 12 So. 601; Cobb v. Vary, 120 Ala. 263, 268, 24 So. 442; Sheffield City Co. v. Tradesman's Nat. Bank, 131 Ala. 185, 32 So. 598; Winter v. City Council of Montgomery, 101 Ala. 649, 14 So. 659; 26 R. C. L. p. 434, § 390; 8 R. C. L. (P. S.) p. 5774, § 390; 4 L. R. A. (N. S.) page 1075, note; Pounds v. Rodgers, 52 Kan. 558, 35 P. 223, 39 Am. St. Rep. 360; Blakemore v. Cooper, 15 N. D. 5, 106 N. W. 566, 4 L. R. A. (N. S.) 1074, 125 Am. St. Rep. 574.

▓▓▓ The interest on subsequently accruing taxes paid by such purchaser to the state, county, and municipality will be repaid at the rate that obtains by the statute at the time of accrual and payment by tax purchaser and to the time the redemption is effectuated. Note the change of the rate of interest at the rate of 10 per cent. per annum under Acts of 1915, p. 475, § 240, and the rate of 15 per cent. per annum under the Acts of 1919, p. 366, § 288, and under section 3108, Code of 1923.

The provision in the statutes at the time of this sale was for "a reasonable attorney's fee for the plaintiff's attorney in bringing the suit." The suit was for "recovery of the real property sold for payment of taxes by such tax title purchaser under section 239, p. 474, Acts of 1915; or section 287, p. 366, Acts of 1919; or section 3108 of the Code of 1923, as may be applicable at the time of the sale.

In Threadgill v. Home Loan Co., 219 Ala. 411, 122 So. 401, the suit was by the owner under section 9905, Code, to clear title and in which there was answer and cross-bill by the tax purchaser at the state auditor's private sale, and asserting a lien for the amounts so paid under section 3120, Code. The observation was made that the statute, providing for attorney's fee for plaintiff-purchaser at tax

sale to recover the possession of the lands for bringing the suit' for possession under the foregoing and last-cited statutes, did not provide for "purchasers at state auditor's private sales." That is, that purchasers at state auditor's private sales are not entitled to attorney's fee for services rendered by their attorneys in resisting suits to clear titles by redeeming owners or their vendees, etc., within the redeeming statutes.

■ We are of opinion, and so hold, that respondent-complainant in the cross-bill was not entitled to reasonable attorney's fee for prosecuting his answer and cross-bill in resisting the claims of the original complainant, owner, or vendee thereof to clear title. The latter pleading in defense by answer and cross-bill as to the allowance of reasonable attorney's fee, was not within the provisions of the statute, and is ruled by Threadgill v. Home Loan Co., supra.

Application overruled.

ANDERSON, C. J., and SAYRE and BROWN, JJ., concur.